Mr. Justice Hagner
delivered the opinion of the court.
The complaint was filed in July, 1876. It alleges the granting of a patent in 1864 to Dr. Cummings for an improvement in artificial palates and gums, and the reissue of that natent in 1865, and subsequent reissues and assignments, in virtue of which the complainants are its present proprietors. It refers at considerable length to a number of cases decided in the different courts of the country in which* as it is said, the validity of the patent with respect to the use of hard rubber or vulcanite has been distinctly affirmed. *75 It also avers that in other enumerated cases, decisions have been made declaring that the use of celluloid in the fabrication of such articles is an infringement of the patent ; that the defendant has been guilty of infringement in the manufacture of dental plates of vulcanite, of rose pearl and of ■celluloid ; and it prays for an injunction and account against him in the ordinary form.
The defendant filed an answer, a supplemental answer and a further answer in the nature of a cross-bill. In these .pleadings he alleges that the Cummings patent, and the subsequent reissues, are invalid, because of manifold irregularities attending the proceedings in the Patent Office ; that Cummings was not originally entitled to the patent, because he was not the inventor, but obtained whatever knowledge he ..possessed on the subject surreptitiously from others; and the pleadings set forth that several persons, among whom are Nelson Goodyear, Hearing and Bevin, were prior inventors of the matter claimed in the patent. He further insists that ■the patent ought not to have been issued, because the matter claimed had been in public use for more than two years before the application of Cummings, and with his knowledge, and that whatever claim Cummings may have had to the invention in its inception, was abandoned by him during the interval between 1862 and 1864. He avers that the judgments in some of the suits mentioned in the bill should not be regarded as binding, because they were undefended, or • decisions were rendered therein by collusion of parties. He denies that celluloid and rose pearl are equivalents of the hard rubber or vulcanite, which was claimed by Cummings ■in his patent and specifications, the substances and processes of using the same being different, and he admits that he has made sets of artificial teeth in bases composed in some instances of vulcanite or hard rubber, and in others of celluloid.
A large number of witnesses were examined by the parties, and by agreement certain portions of the record in the 'Gardiner case were admitted in evidence, and Dr. R. Finley •Hunt was permitted to explain in the presence of this court *76 the method pursued by him in the manufacture of artificial" plates and gums from celluloid.
All the questions involved were elaborately argued by the-distinguished counsel who appeared for the parties, and have been carefully examined by this court.
The first question presented for our consideration is-whether, upon the facts of this case, the defendant is liable for an infringement in the use of dental plates of hard rubber or vulcanite; and this involves the inquiry as to the validity of the Cummings patent for any purpose whatever.
When the bill was filed in this cause there had been no decision upon the question by the Supreme Court of the United States. But since that time the case of Smith vs. Goodyear Dental Vulcanite Company has been determined by that court, and an elaborate and able opinion pronounced by Mr. Justice Strong (three judges dissenting), declaring that there was no abandonment by the patentee of his original application ; that the invention was never abandoned to the public, and that the reissued letters-patent of 1865 are valid. 3 Otto, 486.
It is claimed on the part of the complainants that this decision is a final determination of the point, which is henceforth to be regarded as res adjudícala.
This view is so clearly in the direction of the principle of' public justice, that declares it to be the interest of the. Kepublic that there should be an end of the strife, that we should without further discussion adopt it as settling this - point, except for the earnestness with which it is insisted on the part of the defendant, that the cáse now presented differs so materially in many important particulars from Smith’s case, when that was before the Supreme Court, that we should be justified upon the facts before us in declaring the patent invalid.
It is true, that on every suit, for an infringement, it incompetent for the defendant to dispute the validity of the original patent, a.nd present in defence such objections as-are set forth in the answers in this case. But we do not think that this principle would justify a circuit court in *77 deciding upon such objections, virtually to reverse a judgment carefully enunciated by the Supreme Court, upon a state of facts similar in character. In Smith’s case, the defendant set forth all the objections to the patent which are here insisted upon ; its want of originality, its abandonment by Cummings, and the imperfections and irregularities attending its issue. The present defenses, though differing-as to the names of the persons by whom it is alleged the improvement claimed was invented, and as to the witnesses-who are examined, many of whom appear, so far as we can ascertain, to have testified for the first time m this case, are yet the very matters which were passed upon, though on a different state of proof, by the Supreme Court. The circumstance that Nelson Goodyear is named in this case for the first time as the inventor ; that additional persons are-designated in this case as having been acquainted with the prior use of the thing patented, or that a number of witnesses not heretofore examined, testify in this case in support of these pretensions, and that Cummings, so far from having been prevented by poverty from prosecuting his-claim before the Patent Office, as was established by the testimony in Smith’s case, was abundantly able to incur such necessary expenses, are not sufficient to bring us to the opinion that, upon these additional allegations and facts, the Supreme Court would reverse their rulings announced after careful consideration of similar defences. There are probably few cases of patents affecting important interests,, where the question of want of originality has not been raised, and doubtless in many instances with entire sincerity and honesty on the part of the claimants. When necessity.,, the real mother of invention, demands some improvement upon the existing methods, men of getrius in all parts of the world are stimulated to a simultaneous examination of the-same subject, and the tide of invention advances all along the coast of scientific enquiry with a nearly uniform movement. Such is the well-known history of the concurrent investigations that resulted in Morse’s invention of the telegraph. When the Supreme Court, in the case of, O’Reilly *78 vs. Morse, 15 How., 62, determined the validity of the Morse patent, there were but five claims of prior inventors ¡considered by the court. But the consideration of these rival pretensions involved a thorough examination of the entire question, and resulted in a deliberate judgment in favor of Morse.
From that time forth no inferior court would have been .justified in departing from that judgment, until reviewed by the Supreme Court itself, notwithstanding claimants of the invention should in succession present their pretensions, supported by additional proofs even strong enough to produce grave doubts in the minds of the court. It is proper, therefore, that the questions decided in Smith’s case should be considered as settled in this court. As the defendant has admitted that he has manufactured plates of vulcanite or ■hard rubber, the complainant is entitled to an injunction to prevent further fabrication ,of plates of that material, and to the usual decree for an account in respect to such infringement.
The question as to the use of the celluloid is a different one. It is insisted by the defendant, that in no view can that substance be regarded as within the patent of Cummings ; and to determine this it is necessary to scrutinize that patent with the specifications, to ascertain precisely its extent and scope.
The caveat filed by Dr. Cummings in 1852, in the Patent Office, sets forth the difficulties which had hitherto been experienced in the fitting of sets of artificial teeth, and declares that his improvement consists in forming the plate and gums into which the teeth are to be inserted, “ of rubber or some elastic substance, so compounded with sulphur, lead or similar substances, as to form, a hard gum or whalebone gum.”
In 1852 Dr. Cumming filed a specification of his invention, in which he uses this language:
“ The present invention consists in forming the plate and .gums to which the teeth are attached, of rubber so vulcanized •as to be rigid enough for mastication. * * * The teeth ¡being imbedded in the elastic material, while the said *79 material is in a soft condition, and then baked with the gums and plate,” &c. Again: “ The plate and gums are-formed in one piece, and of rubber, or of rubber and the compounds commonly employed therewith, which' can be reduced to a soft condition and then vulcanized or hardened sufficiently to answer the purposes.” * * * “ The teeth, gums and plate being thus connected, are then baked until the rubber becomes sufficiently vulcanized,” &c. And finally he says : “ What I claim as my invention, and desire to have secured to me by letters-patent, is forming the plate and gums in which the teeth are inserted in one piece of rubber (or other elastic material or materials), which can be hardened sufficiently for the purpose of mastication,” &c.
Accompanying that, is a certificate from T. A. Bevin, who-states that he had worn a set of teeth constructed on the principle of Dr. Cummings, on an india rubber plate,” and declares that the elasticity and texture of the india rubber make it more congenial to the mouth, and certifies with confidence in regard to the value of india rubber for dental substitutes.
In July, 1855, Dr. Cummings, in an amended specification, uses this language:
“ My improvements in the manufacture of sets of artificial teeth, * * * consist in combining them with rubber, &c., which is vulcanized after the teeth are inserted. * * * The vulcanized rubber may be made nearly as hard as bone,” &c.
And, in the conclusion of this specification, he says:
“What I do claim as my invention, and desire to have secured to me by letters-patent, is the improvement in the manufacture of sets of mineral or other artificial teeth, which consists in combining them with a rubber palate and gums, which, after the insertion of the teeth, are vulcanized by Goodyear’s process, or any other process,” &c.
In August, 1855, Dr. Cummings’ attorney, in a communication urging a reconsideration of the Commissioner’s rejection of the application, says:
“ In originating this invention, Mr. Cummings supposed *80 that he was the first in the use of mineral teeth, &c., with a gum, which becomes plastic by heat and hardens by cooling, but he had always intended to use the vulcanized rubber as the best material,” &c.
The Commissioner in his reply discusses the availability of caoutchouc and says : “Furthermore, the india rubber you employ must be treated by one of the known vulcanizing processes,” &c.
In January, 1856, the attorney of Cummings again writes to the Patent Office appealing to the Commissioner from a further rejection, and says: “The combination of the mineral or other teeth, with india rubber (to be vulcanized after the teeth are inserted) makes a new article of manufacture,” &c.
The reply of the examiner affirming the rejection, adopts the language of the preceding application in speaking of -Cummings’ claim—“india rubber to be vulcanized after the teeth are inserted.”
In 1864, another specification is filed by Cummings, through the whole of which the only substance mentioned is hard rubber or vulcanite, i. e.,an elastic material, “which can be hardend sufficiently for the purposes of mastication.”
In April, 1864, the Commissioner of the Patent Office •addressed a letter to Dr. Cummings, in which he refers to the last of three prior rejections of his patent, and uses this language :
“ It appears that a satisfactory reference was then given to the use of gutta percha, and a disclaimer to it made by you, while your present claim and specification is broad enough to cover it. * * * Your claim was then confined to what was known as hard rubber, now called vulcanite. * * * In justice, therefore, to your rights as an inventor the office will not object to the admission of a claim limited to the use of this material for this purpose.”
The patent was granted on June 7, 1864; and the schedule therein referred to, which consists of the amended specification, has the same reiterated reference to hard rubber and vulcanite. On the 10th of January, 1865, there was a re *81 issue of this patent, which recited that Dr. Cummings had assigned his title to the improvement to the Dental Vulcanite Company, and the patent was reissued for the improve* ment, referring to the annexed schedule, in which Dr. Cummings again repeated with fullness the particulars of his invention ; and fourteen times in that specification the substance referred to is spoken of as rubber, hard rubber or vulcanite. The concluding sentence of the specification varies1 somewhat from that adopted by him in any previous specification, and reads in this way :
“ Having thus described the method I have used for making- and using such hard rubber or vulcanite plates, what I claim herein and desire to secure by letters-patent is the plate of' hard rubber, vulcanite or its equivalent, for holding artificial teeth or teeth and gums, substantially as described.
The reissue in March, 1865, to the Dental Vulcanite Company, with the accompanying specifications, is in the same-language.
These citations embrace the descriptions employed by the-inventor and his assignees in their intercourse with the-Patent Office, of the substances to be used in the fabrication of the thing patented.
We will now examine howr the substance is described by the patentee and his assignees in their transactions outside the Office.
In May, 1864, before the patent had issued, Dr. Cummings undertakes to assign to Joseph Gavett one undivided eighth part of the property of his said invention, and letters-patent which may be granted therefor, and this assignment recites that “ I, the said Cummings, have invented a new and useful rubber plate, for which I have made application,” &c. And in July of the same year, Cummings and Gavett, with others, in consideration of $488,000, paid them by the Dental Vulcanite Company, transferred to that company the patent there spoken of by this description : “ The said patent and all improvements that have heretofore been made or hereafter may be made by any or all of us in the use of hard rubber and gutta percha for dental purposes
*82 In December, 1867, a certificate of incorporation was filed in the proper ofiice in New York city by John H. Cheever and others, expressing their desire to form a company under the corporate name of the Goodyear Dental Vulcanite Company, setting forth the object of the incorporation as follows; <4The objects for which said company is to be formed are to manufacture and vend the hard compound of vulcanized caoulchuoc or india rubber and allied gums, so far as the same is applied io dental purposes or dentistry, and for the purpose of manufacturing and selling artificial gums, plates and palates made from said hard compound.”
In all the specifications filed by Cummings reference is' made to the patent granted in May, 1851, to Nelson Goodyear, for the manufacture of hard rubber or vulcanite, as describing the mode of manufacturing the substance to be used in the preparation of artificial palates; and that patent describes very carefully the method pursued by Nelson. Goodyear and shows that the materials used by him were rubber and sulphur, which he declares to be indispensable ingredients in its manufacture. And the assignment to the complainants of the right to make this material of vulcanite,, which is made in May, 1866, by the administrator of Nelson Goodyear, speaks of the matter to be assigned as an im provement in the manufacture of india rubber and allied gums.” The very name adopted by the company would seem plainly to indicate that its operations were designed to extend only to the use of vulcanite.
It seems to us sufficiently clear from these facts, that what was in the mind of Dr. Cummings and of these parties and of the authorities of the Patent Office at the times referred to was vulcanite or hard rubber, or some substance not essentially different from it in origin or charac* teristics.
It seemed to be contended on the part of the complainants that the expression in the specifications filed with reissues of January and March, 1865, “ or its equivalent” maybe considered as enlarging the scope of the original patent so as to embrace celluloid. But it is well settled that the issue *83 of a patent cannot extend to embrace matters not included in the original patent. In the language of the Supreme Court, in O’Reilly vs. Morse, 15 Howard, 112, “it Was issued by the proper lawful authority, and it was the duty of the Commissioner of Patents to see that it did not cover more than the original invention.”
Can celluloid be considered in any way an equivalent, in the proper signification of the term, of hard rubber or Vulcanite ? It is not composed of india rubber or any kind of gum. We are told it is formed from solid collodion, which is made by the treatment of vegetable fibre, as cotton, with nitric and sulphuric acid. This solid collodion, when treated with ether and heat, forms a substance known in commerce as rose pearl, while the collodion treated with gum camphor forms celluloid. But it is clear that any “equivalent ” must be used in the manner described in the specification in the original patent; and it is eqnally clear, from the evidence adduced in this case, that it would be practically impossible to pursue with celluloid the process of fabrication described by Dr. Cummings as necessary to the use of his invention. The dentist who intends to use the vulcanite or hard rubber according to Dr. Cummings’ method, fills the mould or plaster cast, in which the teeth are set up, with soft rubber treated with sulphur according to Nelson Goodyear’s process, and then with his fingers or otherwise, in a manner involving a certain degree of personal dexterity, moulds the rubber while in a plastic state to the proper form for gums surrounding the teeth. The soft rubber thus placed in contact with the teeth is then exposed to the process described by Nelson Goodyear’s invention, and in that process is hardened or vulcanized. In the use of celluloid, according to Dr. Hunt’s testimony, the dentist, after preparing the pattern or mould and setting up the teeth in the proper form supported by plaster and wax, uses a “ blank ” made of celluloid, which has been sold to him from the manufacturer, this “ blank” being a hard plate somewhat resembling in consistency a piece of stiff glue. He selects a blank which conforms moát nearly to the shape of the patient’s mouth, and places it -in *84 the mould against the teeth. It would be impossible for him, in manipulating this stiff substance, to conform to the method pointed out in Dr. Cummings’ specifications. Neither with the fingers nor with any other instrument could he form the gums by pressing the hard celluloid blank into immediate contact with the teeth. Instead of doing this, after he has placed it in the mould and without subjecting it to heat by water or otherwise, he screws down the top of the flask or mould, and then for the first time subjects this hard substance to heat, the effect of which is to melt or render plastic the hitherto stiff form of the blank. ■ As the melting progresses, he is enabled to screw the top of the flask down tighter, provision being made for the escape of superfluous material at the sides ; and after a suificent interval of time the process is completed, the artificial palate and gums are removed from the flask, arid the teeth are found embedded in the celluloid.
This mould seems to us to be just the reverse of the processes described in Dr. Cummings’ specifications.
The Supreme Court, on page 493 of 3 Otto says:
“The process detailed is thereby made as much a part of the invention as are the materials of lohieh the product is composed.”
In the opinion of the Supreme Court, therefore, the character of the materials of which the product is composed is necessarily involved in the invention itself, and it is impossible to comply with the requirements of the invention without the use of the materials pointed out in the specifications.
- It is said by the complainants that the use of celluloid is as old as the date of of the Cummings patent, and that, therefore, its use for artificial palates was allowed .under the Cummings patent, and its unlicensed use by dentists is an infringement of the patent. We cannot see how this eir-, eumstance could produce this effect, even if the alleged fact appeared in evidence, unless it also appeared that celluloid was one of the substances embraced in the. patent. But in the case before the court there is no proof of the common. *85 use of celluloid at the date of the patent. On page 31 of the complainant’s brief, it is stated that “ it appears from the evidence that celluloid, or solid collodion was well known at the.date of the plaintiff’s patent as a substitute for vulcam ite for the general purposes of the arts, including this specific purpose ; but the references made in the brief to page 6 of the complainant’s record fail to sustain this assertion. The testimony to be found on that page says nothing at all as to the length of time celluloid has been in use ; and after careful examination of the entire case, we have found no evidence bearing at all upon the point, unless it is furnished by the three patents to Parks, Mackintosh and Hyatt, which are contained in the complainant’s record. The patent to Parks, granted in Great Britain in 1856, embraces claims for several matters which would require separate patents in this country, but which it appears, according to the English practice, can be embraced in one patent. One of these matters is the treatment of collodion with ether and heat pro- . ducing the substance known as rose pearl. And this it is which Mackintosh in his specification in 1860 claims to apply to the fabrication of artificial palates in dentistry. But rose pearl is a different substance from celluloid, being formed as we have' stated, by the treatment of collodion with ether and heat. The only evidence which would go to fix the date of the invention, or use of celluloid, to be found in any of the records or testimony, is the patent of the Hyatts, granted by the United States in 1870, which describes the fabrication of celluloid by the treatment of collodion with gum camphor, forming celluloid, the subject now under examination, and declares that the patentees claim to be the inventors of the improvement which had not previously been known.
We have thus far considered the question without direct authority, upon the point under consideration. It has never been presented to the Supreme Court of the United States» but we have been referred to two decisions in the circuit which are directly at variance in their conclusions. In view of this diversity of views by these learned judges, we have *86 thought it best to examine the case at bar for ourselves, though at inconvenient length.
On the 5th of October, 1877, Judge Shepley delivered an opinion characterized by his known ability, in the United States District Court of the District of Massachusetts, in the case of the Goodyear Dental Vulcanite Company vs, Davis, and the defendants in sixty-seven other cases. In these cases, the learned judge distinctly held that the Cummings patent was not infringed by a plate made of celluloid, the product and the process being essentially different. In this opinion the judge says:
“The defendants use, in making their set of artificial teeth, a plate made of celluloid, substantially a new material, discovered and patented since the date of the Cummings invention. This substance is compounded of cellulose, or vegetable fibre and camphor. No rubber or other equivalent gum, and no sulphur or equivalent for sulphur, in the process enter into its ingredients. It is not a vulcanizable compound, and contains no vulcanizing agents in its composition. The camphor in its composition, instead of being a vulcanizing agent, causes the composition to soften instead of harden under the influence of heat. The product when compounded, and before being subjected to heat, is not soft like soft rubber under like conditions, but hard.”
The other opinion referred to is that of Judge Wheeler, delivered in the same month in the New York circuit, in the case of the Goodyear Dental Vulcanite Company vs. Preterre. Judge Wheeler declares that in the case before him :
“It appears from the evidence that celluloid and rose pearl in use by the defendant, whether actually the same as that material in that case or not, were well known at the date of that invention.”
And again :
“That the evidence is full that celluloid and rose pearl, with their melting and other qualities useful to this manufacture, were well known at the date of the invention and patent of Cummings.”
The judge, however, declares that if the cases of Davis et *87 al., decided by Judge Shepley, were exactly like the case before him, the decision would exercise a great and controlling weight with him. In the case at bar there is no such evidence, as we have stated, of the antecedent invention of •celluloid as Judge Wheeler found in the case of Preterre, and, therefore, the present case conforms rather to the decision of Judge Shepley in the 68 cases referred to.
It has been urged upon the court that we should adopt this decision of Judge Wheeler, followed as it was by the judgment recently delivered in the circuit court, in the District of Maryland, upon the ground of comity, which it is said governs circuit courts, when they are referred to decisions of other circuits, upon a state of facts similar to that appearing before them. This idea of comity does not' seem to have controlled the decision of Judge Wheeler, and upon the ground stated by him that where a suit is brought for an infringement, the decision must depend upon the evidence in the particular case, and it is only when the facts of the cases are alike, that one ought to control the other.
Finding the facts in the case at bar, more nearly resembling those in the case decided by Judge Shepley, and concurring with him in his reasoning and conclusions, our decision coincides with that announced by him in the cases referred to, that the use of celluloid is not an infringement ■of the Cummings patent held by the complainants.